IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ENID MARRERO GUTIÉRREZ, et al.,

Plaintiffs

v.                                              CIVIL 03-1256 (JAG) (JA)

ESPERANZA MOLINA, et al.,

Defendants

## OPINION AND ORDER

### I.  INTRODUCTION AND PROCEDURAL HISTORY

This matter is before the court on defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), filed on May 12, 2006, by defendants Luis Coss, Myrna Crespo-Saavedra, Housing Department of the Commonwealth of Puerto Rico ("PRHD"), Esperanza Molina , Ileana Echegoyen, Gabriel Alonso, Nilsa Enid Negrón, Ramonita García, and Wanda Román. (Docket No. 70.)  The original complaint in this case was filed on March 10, 2003 (Docket No. 1) and was amended on July 19, 2004.  (Docket No. 30.)  Upon consent of all parties, this case was transferred to me on September 10, 2004.  (Docket No. 44.)  An answer to the amended complaint was filed on November 17, 2004.  (Docket No. 47.)  A reply to the motion for judgment on the pleadings was filed on June 12,

CIVIL 03-1256 (JAG) (JA)                          2

2006, (Docket No. 77), and exhibits in support were filed on the following day. (Docket No. 78.)

## II. FACTS

The basic facts of this case have been outlined in the opinion and or order of August 11, 2004 (Docket No. 34, at 2) and are incorporated as if set forth fully herein. The facts are supplemented only by the following: plaintiff Marrero held a career position as "Director of Section 8 Program" since 1994. (Docket No. 30, amended complaint, at 5, ¶¶ 20-21.) Defendant Iván Vélez was plaintiff Marrero's direct supervisor. On April 18, 2002, defendant Vélez, a PDP member, was demoted to a lower position and notified that PRHD was seeking to have him terminated for committing serious illegal acts and for failing to perform his duties. (Id. at 8, ¶¶ 33 & 34.) On May 3, 2002, plaintiff Marrero received a letter from PRHD. This letter, followed by a second, accused her of failing to do her job and of committing illegal acts; the accusations were similar to those against defendant Vélez. (Id. at 11-12, ¶¶ 48 & 49.) Plaintiff Marrero was summoned to an informal hearing. At the hearing, plaintiff Marrero was able to rebut the accusations against her but the hearing officer nevertheless decided to submit a negative report. Pending a final disposition on the accusations, plaintiff Marrero was allowed to continue working. (Id. at 11-12, ¶¶ 52 & 53.) In June of 2002, defendant Molina retired. (Id. at 7, ¶ 32.) There was a reorganization at PRHD and defendant Alonso became the Section 8 Program supervisor. The plaintiff alleges that this reorganization was a "sham"

CIVIL 03-1256 (JAG) (JA)                 3

that failed to follow federal guidelines. The reorganization profoundly altered plaintiff's duties at PRHD and she was not able to adequately protest the reorganization. The reorganization allegedly amounted to a "constructive demotion." (Id. at 8-9, ¶¶ 37-39.) During this time her subordinates often circumvented her. Additionally, plaintiff Marrero's supervisors treated her in a discourteous and condescending manner. (Id. at 9, ¶ 41.) At times, plaintiff Marrero's political party, the New Progressive Party ("NPP"), was mocked by defendant Molina. Defendant Molina was supposedly a member of the Popular Democratic Party ("PDP"). (Id. at 42.) The aforementioned situation worsened a "cancerous" condition that plaintiff Marrero suffered from. The defendants continued to mock her claiming that she was not really sick and that she was attempting to not do work by faking illness. (Id. at 11, ¶ 47.) On March 10, 2003, plaintiff Marrero was notified that she was "separated from her employment and salary." (Id. at 14, ¶ 59.)

On May 16, 2000, plaintiff Bou was promoted to the career position of "Administrative Director II" at PRHD. (Id. at 15, ¶ 62.) Defendant Coss wished to remove Mr. Bou from his position in order to gain "political control" of the department. (Id. at 15, ¶ 65.) To that end, defendant Coss requested that Mr. Angel Semidey find a way to remove Mr. Bou from his position. Mr. Semidey was unable to find a legal way and told this to defendant Coss. (Id. at 16, ¶¶ 68 & 70.) Defendant Coss was so enraged by Mr. Semidey's inability that he requested

CIVIL 03-1256 (JAG) (JA)                           4

Mr. Semidey's resignation; Mr. Semidey immediately resigned. (Id. at ¶ 71.) On March 7, 2001, Mr. Bou received a letter from defendant Echegoyen informing him that, because he had been promoted illegally, his appointment was void and he would be returned to his prior job. (Id. at ¶ 72.) On July 27, 2002, plaintiff Bou encountered Mr. Semidey at a celebration. On that date Mr. Semidey, for the first time, notified plaintiff Bou of the real reason behind his demotion. The above facts are based on the amended complaint and assumed to be true for purposes of the pending motion. (Id. at 17, ¶¶ 74-75.)

### III. DISCUSSION

A. STANDARD FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), is for all intents and purposes a Rule 12(b)(6) motion to dismiss filed after the close of the pleadings. Pasdon v. City of Peabody, 417 F.3d 225, 226 n.1 (1st Cir. 2005); Torres-Negrón v. Merck & Co., 376 F. Supp. 2d 121, 125 (D.P.R. 2005). Under Rule 12(b)(6), a litigant is permitted to move to dismiss an action for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Dismissal under the rule is not appropriate "unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993) (quoting McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 246 (1980) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Viera-Marcano v. Ramírez-

Sánchez, 224 F. Supp. 2d 397, 399 (D.P.R. 2002). In ruling upon a Rule 12(b)(6) motion, the court must accept as true all the well-pleaded factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. Perry v. New England Bus. Serv., Inc., 347 F.3d 343, 344 (1st Cir. 2003) (citing Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998)). The complaint should only be dismissed if it appears that, "under the facts alleged, [the plaintiff] cannot recover under any viable theory." Campagna v. Mass. Dep't of Envtl. Prot., 334 F.3d 150, 154 (1st Cir. 2003) (quoting Nethersole v. Bulger, 287 F.3d 15, 18 (1st Cir. 2002)); see Class v. Puerto Rico, 309 F. Supp. 2d 235, 236 (D.P.R. 2004). Accordingly, to survive a Rule 12(b)(6) motion, plaintiffs must present "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Romero Barceló v. Hernández Agosto, 75 F.3d 23, 28 n.2 (1st Cir. 1996) (citing Rumford Pharmacy, Inc. v. City of E. Providence, 970 F.2d 996, 998 (1st Cir. 1992) (quoting Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

B. PLAINTIFF BOU - STATUTE OF LIMITATIONS

It has been consistently held that "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." Wilson v. García, 471 U.S. 261, 266-67 (1985) (footnote omitted) (holding that a state's statute of limitations for torts must be applied to cases arising under

CIVIL 03-1256 (JAG) (JA)                6

section 1983); Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004). The applicable law in Puerto Rico is Puerto Rico Laws Annotated, title 31, section 5298(2). As such, a one-year statute of limitations applies for actions brought in the District of Puerto Rico under section 1983. Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). Although how long the metaphorical clock will tick for is derived from state law, when that clock starts ticking finds its genesis in federal law, that is, on the date that the plaintiff knew or should have known of the harm. Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992). Plaintiff Bou alleges that he was demoted without a hearing on March 7, 2001 through a letter that accused him of having been improperly promoted in the first place. It was on that date that plaintiff Bou knew that PRHD had removed him from his position without "request[ing] any documentation from Bou regarding the legality or illegality of his appointment . . . ." (Docket No. 30, at 18, ¶ 79.) If Mr. Bou wished to argue that he was improperly demoted for lack of a hearing, he had one year to do so. That year expired on March 7, 2002. The original complaint was filed on March 10, 2003. Therefore, plaintiff Bou's due process claims are time barred.

Plaintiff Bou further alleges that it was not until July 27, 2002 that he was informed of the political nature of his demotion after he casually met Mr. Semidey. The First Circuit has repeatedly and "unambiguously" rejected the notion that a claim accrues once the plaintiff knows of both the action against him and the

CIVIL 03-1256 (JAG) (JA)                7

discriminatory animus behind it. <u>Vistamar, Inc. v. Fagundo-Fagundo</u>, 430 F.3d 66, 70 (1st Cir. 2005) (citing <u>Morris v. Gov't Dev. Bank of P.R.</u>, 27 F.3d 746, 749-50 (1st Cir. 1994)). A claim accrues once a person has knowledge of the adverse employment action; he need not know of the reasons behind it, even if those reasons are integral to his cause of action. <u>Morris v. Gov't Dev. Bank of P.R.</u>, 27 F.3d at 750. Plaintiff Bou had clear knowledge of the adverse action against him when he received the March 7, 2001 letter. That it was not until July 27, 2002 that plaintiff Bou learned of the real reasons behind his demotion is irrelevant. Despite the serious nature of plaintiff Bou's complaints, his section 1983 political discrimination claim is time-barred.

    C.  PLAINTIFF MARRERO - DUE PROCESS

No "[s]tate [shall] deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. 14, § 1. While the right to due process is established by the Constitution, and the depravation of said right is made actionable by section 1983, property interests are created by the state. A plaintiff can be said to have sufficiently pled a due process violation when he or she "allege[s] first that [he or she] ha[d] a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [him or her] of that property interest without constitutionally adequate process." <u>SFW Arecibo, Ltd. v. Rodríguez</u>, 415 F.3d 135, 139 (1st Cir.), <u>cert. denied</u>, 126 S. Ct. 829 (2005) (quoting <u>PFZ Properties, Inc. v. Rodríguez</u>, 928 F.2d 28, 30 (1st Cir. 1991)). Puerto Rico creates

CIVIL 03-1256 (JAG) (JA) 8

a property interest in continued career employment. Soto González v. Rey Hernández, 310 F. Supp. 2d 418, 425 (D.P.R. 2004) (citing Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988)). Thus, because plaintiff Marrero has alleged that she was removed from a career position, she has sufficiently pled the first element. Plaintiff Marrero has further alleged that the defendants were employees of a state agency, thereby fulfilling the "color of state law" requirement. Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005). Last, the court must determine if Plaintiff Marrero has sufficiently pled a lack of constitutionally adequate process prior to her removal. Id.

Plaintiff Marrero alleges that she received a letter informing her of PRHD's accusations against her. This letter, along with a second, informed her of a scheduled hearing that she was required to attend. Plaintiff Marrero alleges that said hearing, which she attended, was a "sham." This "bold assertion" is not supported by the facts that she alleges. For example, she claims that she was still recuperating from her surgery at the time, but does not allege that she requested a postponement. Plaintiff Marrero also claims that she was not given an opportunity to fully defend herself, (Docket No. 30, at 11-12, ¶ 48), yet she then claims that she was able to "satisfactorily" defend herself against the charges. (Id. at 12, ¶ 52.) In Cepero-Rivera v. Fagundo, the plaintiff, an employee of the Puerto Rico Highway Authority, claimed that his due process rights were violated because his hearing date did not afford him enough time to review the evidence against him and formulate

CIVIL 03-1256 (JAG) (JA)                         9

a defense.  The First Circuit observed that, "in his zeal to defend himself, [the plaintiff] may have misunderstood the nature of a pre-termination hearing.  Due process requires only that the pre-termination hearing fulfill the purpose of 'an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Cepero-Rivera v. Fagundo, 414 F.3d 124, 135 (1st Cir. 2005) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46 (1985)).  When the government seeks to terminate a career employee they must provide that employee with "oral or written notice of the charges against [her], a [summary] of the . . . evidence, and an opportunity to present [her] side of the story." Cepero-Rivera v. Fagundo, 414 F.3d at 134 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546).  "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id.  Judging solely plaintiff Marrero's own factual assertions in the amended complaint, PRHD's hearing has met the Cepero-Rivera standard.  PRHD did allow her to continue working from August of 2002 until March, 10 2003 while they further investigated.  Besides, "the Constitution requires only an initial check against erroneous decisions, not that the state follow best practices." O'Neill v. Baker, 210 F.3d 41, 49 n.10 (1st Cir. 2000).  Plaintiff Marrero also alleges that she was entitled to a "post-termination" hearing in

CIVIL 03-1256 (JAG) (JA)                    10

addition to the pre-termination hearing conducted by PRHD. Ms. Marrero does not cite any cases supporting this proposition.

### D. POLITICAL DISCRIMINATION

Up until recently, a heightened pleading requirement was required in this circuit for civil rights actions. Currently, only a "notice pleading regime," as specified in Federal Rule of Civil Procedure 8(a), is required. Educadores Puertorriqueños en Acción v. Rey-Hernández, 367 F.3d 61, 66-67 (1st Cir. 2004). This new approach follows Swierkiewicz v. Sorema, 534 U.S. 506 (2002). In Swierkiewicz, the Supreme Court was clear that simplified pleading standards are to be used. Courts should rely on "liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. at 512. In Educadores, the First Circuit explained that to meet the Swierkiewicz standard, a civil rights complaint needs to at least state "minimal facts as to who did what to whom, when, where, and why–although why, when why means the actor's state of mind, can be averred generally." Educadores Puertorriqueños en Acción v. Rey-Hernández, 367 F.3d at 68. A plaintiff in a political discrimination case should allege that the actions were motivated by politics, that the plaintiff belonged to a political party, that the defendants knew of this, and that they belonged to a different political party. Otero v. P.R. Indus. Comm'n, 441 F.3d 18, 21 (1st Cir. 2006). To make her case for political discrimination under section 1983, the "plaintiff [] must [allege] that defendants deprived [her] of federally protected

CIVIL 03-1256 (JAG) (JA)                    11

rights while acting under color of state law." <u>Aguiar-Carrasquillo v. Agosto-Alicea</u>, 445 F.3d 19, 25 (1st Cir. 2006) (citing <u>Cepero-Rivera v. Fagundo</u>, 414 F.3d at 129). "They must further [allege] that they have engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the adverse employment action." <u>Aguiar-Carrasquillo v. Agosto-Alicea</u>, 445 F.3d at 25 (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)). First, because the plaintiff has alleged that the defendants were employees of a state agency, the "color of state law" requirement is met. <u>Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.</u>, 421 F.3d at 7. Plaintiff Marrero also alleges "who did what to whom." However, the amended complaint suffers from a gross lack of "when." The amended complaint is a litany of events that are unaccompanied by dates. The amended complaint has also failed to adequately explain or aver "why." Neither the amended complaint (Docket No. 30) nor the reply (Docket No. 77) actually allege that any specific actions were taken because of political animosity. Plaintiff Marrero does allege that she and the NPP were mocked by defendant Molina. However, she does not causally connect any specific actions taken against her with a discriminatory animus. There are only two instances that plaintiff Marrero specifically correlates a motive to actions taken against her. The first is when she claims that the defendants were "acting in reprisal" by "harassing and intimidating her at work . . . because [p]laintiff complained about the irregularities in the performance of public duties and complained about the discriminatory treatment

CIVIL 03-1256 (JAG) (JA)                    12

. . . ." (Docket No. 30, at 10, ¶ 41.) The second is when she, in a blanket statement, claims that all "defendants have performed, fostered, and encouraged the continuos persecution, harassment, transfers, reprisals and demotions of [both plaintiffs], because of plaintiffs' affiliation with the NPP and in reprisal for defending their rights in frivolous processes commenced against them, as explained forthwith." (Id. at 7, ¶ 31.) The promised explanation was not provided; the amended complaint does not explain the legal or factual arguments upon which plaintiff Marrero's complaint rests.  Plaintiff Marrero further makes several assertions that are not sufficiently supported by facts as to allow the court to make an inference in her favor.  For example, Mrs. Marrero states that a reorganization that occurred at PRHD was done "in open contravention of federal statutes and regulations." (Id. at 9, ¶ 39.)  Plaintiff Marrero does not develop this theory because she does not state which federal statutes or regulations were violated, how they were violated, and how she has standing.  Nor does she develop her "constructive demotion" theory, though that would be rather difficult to do seeing as the First Circuit has "rejected as insufficiently revealing the tag 'constructive demotion'[.]" Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989). (Docket No. 30, at 14, ¶ 58.) The court will make all reasonable inferences in favor of the plaintiff, but cannot give weight to "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 52 (1st Cir.

CIVIL 03-1256 (JAG) (JA)                13

1990)). Although the notice-pleading requirements create little more than a mild hump in the road, a complaint that has not garnered sufficient velocity will nevertheless be unable to surmount it.

E.  EQUAL PROTECTION

The defendants point out that equal protection claims are essentially encompassed in plaintiff Marrero's first amendment claim.[1] This assertion is correct. Plaintiff Marrero's equal protection claim parallels the facts of her political discrimination claim. Thus, little would be served in entertaining both at the same time and "little basis or justification [exists] for applying equal protection analysis in [this] situation."[2] Néstor Colón Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992); see Dávila Alemán v. Feliciano Melecio, 992 F. Supp. 91, 102 (D.P.R. 1998).

F.  FIFTH AMENDMENT

The Fifth Amendment to the United States Constitution applies to actions taken by the federal government, not the states. Medina Díaz v. González Rivera, 371 F. Supp. 2d 77, 83 (D.P.R. 2005). PRHD is an entity of the Commonwealth of

---

[1] The plaintiff does not respond to this argument.

[2] If one was to analyze a claim of equal protection, it would be hard to imagine how plaintiff Marrero's claims of equal protection violations can overcome the fact that, by her own allegation, defendant Vélez, a PDP member, was also discharged for the same reasons as plaintiff Marrero was. (Docket No. 30, at 12, ¶ 49.)

CIVIL 03-1256 (JAG) (JA)                    14

Puerto Rico and the plaintiffs do not allege any claims against the federal government.

### G. IVÁN VÉLEZ

The only defendant not to move for dismissal is Iván Vélez, who was at one point plaintiff Marrero's supervisor. Vélez, apparently a PPD member, was demoted and later discharged himself for failure to perform his duties. In the amended complaint, co-defendant Vélez is grouped with co-defendants Molina, Echegoyen, García, Román, Alonso and Negrón, all of whom are accused of jointly creating and encouraging a hostile work environment, denying plaintiff equal treatment with other employees, excluding from participation in meetings, taking away her functions, humiliating her publicly, questioning her medical condition, demoting her, and taking reprisals because of plaintiff's complaining about irregularities. She notes that false complaints were filed against her, alleging that she had failed to perform her duties and threatening her with dismissal. ( Docket No. 30, at 9-10, ¶ 41.) The threat of removal from office was also suffered by Vélez, on the same date and with the same letter as plaintiff Marrero. She accuses him of not clearing up her lack of involvement in the acts leading to his demotion. She learned that he related her involvement in those acts in order to obtain a lesser penalty. (Id. at 12, ¶ 49.)

CIVIL 03-1256 (JAG) (JA)                 15

Aside from conclusory generalizations, plaintiff does not state specifically any facts which reflect a political animus behind any action or inaction on the part of co-defendant Vélez, himself discharged.  That she learned upon information and belief that Vélez did not clear her when he could have is too gossamer to weigh and is the type of vagueness that cannot survive a Rule 12(c) motion.  Aside from the generic grouping of all defendants, the silence of Vélez is the one individual act allegedly made by him.  However, there is no information that shows that political affiliation was behind such inaction or that such inaction led to a depravation of her constitutional rights, or that anything Vélez said was considered by someone who violated plaintiff's constitutional rights.  Under Gooley v. Mobil Oil Corp., 851 F.2d at 514, "the factual allegations must be specific enough to justify 'drag[ging] a defendant past the pleading threshold[.]'"  DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (quoting DM Research, Inc. v. College of Am. Pathologists, 2 F. Supp. 2d 226, 228 (D.R.I. 1998) (quoting Gooley v. Mobil Oil Corp., 851 F.2d at 514)).  Plaintiff must "allege a factual predicate concrete enough to warrant further proceedings . . . . "  DM Research, Inc. v. College of Am. Pathologists, 170 F.3d at 55.

In any event, plaintiffs have moved to dismiss the complaint as to Mr. Vélez with prejudice.  (Docket No. 81.)  The motion is granted.

CIVIL 03-1256 (JAG) (JA)                  16

### G.  SUPPLEMENTAL JURISDICTION

In accordance with 28 U.S.C. § 1367(c)(3), a district court that does not sit in diversity has the discretion to dismiss a plaintiff's supplemental state claims once it has dismissed all federal claims brought by that plaintiff.  In accordance with the established rule in the First Circuit, this district has consistently done so.  Figueroa Telemaco v. Mobile Paints Mfg. Co., 421 F. Supp. 2d 440, 451 (D.P.R. 2006) (citing Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992)).  Since all of plaintiffs' federal claims have been dismissed, I decline to hear the supplemental claims.

### IV.  CONCLUSION

In view of the above, the defendants' motion is GRANTED.  Accordingly, the amended complaint is DISMISSED.  The Clerk is to enter judgment accordingly.

SO ORDERED.

At San Juan, Puerto Rico this 5th day of September, 2006.

                                        S/ JUSTO ARENAS
                                        Chief United States Magistrate Judge